UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

CALVIN FONVILLE,

                              Plaintiff,              **MEMORANDUM & ORDER**
                                                      17-CV-7440 (MKB)

                v.

DETECTIVE MICHAEL YU, Police Officer Badge
#947625 and DETECTIVE STEVEN JONES,
Police Officer Badge #790,

                              Defendants.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Calvin Fonville, proceeding *pro se* and currently incarcerated at the Vernon C.

Bain Correctional Center, commenced the above-captioned action on December 8, 2017, against

Defendants Detective Michael Yu and Detective Steven Jones, (Compl., Docket Entry No. 1),

and filed an Amended Complaint on January 17, 2018, (Am. Compl., Docket Entry No. 4).

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, alleging that on October 18, 2017, during

his arrest, Defendants "beat and harmed [him] physically," causing bruises to his face, neck, and

body, mental distress, and pain and suffering (the "Incident") and following his arrest,

Defendants unlawfully entered his dwelling located at 75-06 153rd Street, Apartment 2E,

Queens, New York (the "Apartment"), and failed to secure it, resulting in the loss of his personal

property.  (*Id.* at 1–4.)  The Court construes the Amended Complaint to also assert a claim for

negligence in causing the loss of personal property[1] in the Apartment under New York state law. (*Id.*)  Plaintiff seeks $3 million in damages.  (*Id.* at 5.)

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiff opposes the motion.[2]  For the reasons discussed below, the Court grants Defendants' motion for summary judgment in part and denies it in part.

## I.  Background

The following facts are undisputed unless otherwise noted.

### a.  The Incident

On multiple occasions in 2017, Plaintiff sold drugs to an undercover officer (the "UC") of the New York City Police Department ("NYPD").[3]  "On October 18, 2017, the UC contacted Plaintiff and requested to purchase heroin."  (Defs.' 56.1 ¶ 4; Pl.'s Dep. Tr. 66:19–25, 67:1–20.) "Shortly thereafter, Plaintiff met his supplier near a McDonald's restaurant" near 73rd Avenue in Flushing, New York, "and obtained the heroin he intended to sell to the UC."  (Defs.' 56.1 ¶ 5; Pl.'s Dep. Tr. 66:18–69:16.)  While carrying the heroin in a black grocery bag, Plaintiff walked to the location where he had agreed to meet the UC, a "BP gas station located just a few blocks away" at 73-15 Parsons Boulevard, Queens, New York.  (Defs.' 56.1 ¶ 6; Pl.'s Dep. Tr. 67:8–14,

---

[1]  Plaintiff alleges that the "[arresting] officer took [his] house keys," "used said keys to enter . . . without a search [warrant]," and "left [his] door open without securing [his] [A]partment," and that as a result, an estimated $44,940 of personal property went missing. (Am. Compl. 4.)

[2]  (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 65; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 69; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 63.)

[3]  (Defs.' Stmnt. of Material Facts pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶ 1, Docket Entry No. 67; Dep. Tr. of Calvin Fonville dated Oct. 2, 2019 ("Pl.'s Dep. Tr."), annexed to Decl. of William Thomas Gosling dated Oct. 6, 2020 ("Gosling Decl.") as Ex. A, at 60:10–25, 61:1–18, 62:16–19, Docket Entry No. 67-1.)

68:18–69:1, 69:13–20, 87:24–25, 88:1–23.)  As Plaintiff approached the BP gas station, at least three vehicles belonging to the NYPD drove into the gas station.  (Defs.' 56.1 ¶ 7; Pl.'s Dep. Tr. 70:6–25, 71:1–13.)  Once Plaintiff saw the NYPD vehicles, "he threw the black grocery bag containing heroin away from his person."  (Defs.' 56.1 ¶ 8; Pl.'s Dep. Tr. 87:24–25, 88:1–17.)

### b.  Plaintiff's arrest

The parties dispute Defendants' involvement in the events that immediately followed Plaintiff throwing away the black grocery bag.  Plaintiff asserts that he did not try to run or resist arrest.  (*See* Pl.'s 56.1 ¶ 9, Docket Entry No. 63; Pl.'s Dep. Tr. 77:22–25.)  He notes that three or four officers "threw [him] down" after grabbing his arms, shoulders, and leg, (Pl.'s Dep. Tr. 78:4–16), and that one of the officers at the BP gas station "put handcuffs" on him, (*id.* at 83:2–11.  In addition, Plaintiff contends that Defendants are the officers who brought him to the ground and lifted him back up, raises discovery objections about his failure to obtain discovery, asserts that "Jones made the arrest and the arrest report," "assum[es]" that Yu was present at the BP gas station during his arrest, and notes that he saw Yu "[a]t one point" at "the precinct when they took [him] out of the car."[4]  (Pl.'s 56.1 ¶¶ 10, 14–18; Pl.'s Dep. Tr. 72:8–19.)

Defendants maintain that Plaintiff merely assumes that Yu was present at his arrest, (Defs.' 56.1 ¶ 18; Pl.'s Dep. Tr. 72:8–19), and that Plaintiff saw Jones but not Yu, (Defs.'

---

[4]  Plaintiff argues that he is prohibited from "substantiating all of his claims because . . . [D]efendants failed to turn over all discovery pursuant to" Rules 5 and 26 of the Federal Rules of Civil Procedure (the "discovery objections").  (Pl.'s 56.1 ¶ 13.)  Defendants dispute Plaintiff's claim and contend that they "served [P]laintiff with . . . Rule 26 [d]isclosures and three [s]upplemental [d]isclosures with documents," that "Plaintiff did not make any request for documents that have remained unanswered," and that Plaintiff has not otherwise argued "that [D]efendants failed to respond to any such discovery request."  (Defs.' Reply ¶ 13.)  Defendants also contend that Rule 5 is irrelevant to the instant motion.  (Defs.' Reply ¶¶ 14–18.)

56.1 ¶ 13; Pl.'s Dep. Tr. 72:8–19, 72:20–22).  In support, Defendants assert that Plaintiff was "brought to the ground" by one or more NYPD officers who were not Defendants[5] and that these non-defendant NYPD officers then "lifted [P]laintiff off the ground and escorted him to a nearby police vehicle."  (Defs.' 56.1 ¶ 10; Pl.'s Dep. Tr. 88–90, 91:3–15.)  Defendants further assert that Yu does not appear on the arrest report, (Defs.' 56.1 Reply ¶ 20, Docket Entry No. 70; *see* Arrest Report, annexed to Gosling Decl. as Ex. C, Docket Entry No. 67-3), and that Plaintiff does not know whether Jones or Yu kicked him, punched him, brought him to the ground, or placed him in handcuffs, (Defs.' 56.1 ¶¶ 14–17; Pl.'s Dep. Tr. 81:9–25, 82:1, 83:4–11).

Jones arrested Plaintiff at the BP gas station at 5:50 PM for criminal sale of a controlled substance in the first, second, and third degrees and for criminal sale of a controlled substance in or near school grounds.[6]  (Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11; *see* Arrest Report.)  Defendants contend that Plaintiff was charged with selling heroin to an undercover officer on nine separate occasions and cocaine to an undercover officer on five separate occasions.  (Defs.' 56.1 ¶ 12; Arrest Report; Arrest Report II, annexed to Gosling Decl. as Ex. D, Docket Entry No. 67-4; Arrest Report III, annexed to Gosling Decl. as Ex. E, Docket Entry No. 67-5.)  Plaintiff "agrees and disagrees" with Defendants' contention regarding his drug sales.  (Pl.'s 56.1 ¶ 12.)

---

[5]  (Defs.' 56.1 ¶¶ 9–10; Pl.'s Dep. Tr. 77:22–25, 78:1–3, 86:25, 87:1–18, 88–90, 91:3–15.)  Plaintiff testified that eight to ten NYPD officers grabbed him, punched, and kicked him at the BP gas station.  (Pl.'s Dep. Tr. 71:1–25, 72:1–3.)

[6]  Plaintiff separately adds that Defendants "were the arresting officers" and that "Jones made the arrest."  (Pl.'s 56.1 ¶¶ 10, 20.)

4

Following Plaintiff's arrest at the BP gas station, Plaintiff was transported to the 107th Precinct.  (Defs.' 56.1 ¶ 20; Pl.'s 56.1 ¶ 20.)  The parties disagree about who transported Plaintiff to the precinct.  (*Id.*)  Defendants contend that other non-defendant NYPD officers transported Plaintiff, (Defs.' 56.1 ¶ 20; Pl.'s Dep. Tr. 91:3–25, 92:1–15; 94:6–8), but Plaintiff contends that Defendants were the arresting officers and that they transported him to the precinct, (Pl.'s 56.1 ¶ 20).

### c.  The search of the Apartment

The parties dispute the events that occurred during the October 18, 2017 search of the Apartment located at 75-06 153rd Street, Apartment 2E, Queens, New York.[7]  Defendants contend that Jones obtained a search warrant the day prior to the search, October 17, 2017, which authorized Jones and "Queens Narcotics" to search the Apartment between 6:00 AM and 9:00 PM for:

> heroin, cocaine, controlled substances, narcotics paraphernalia
> including but not limited to plastic bags, diluents, . . . scales, records
> or other evidence of ownership or use of [Plaintiff's apartment],
> records of narcotics and/or controlled substances transactions, . . .
> [and] such United States currency as used to purchase narcotics
> and/or controlled substances, and/or which represent the proceeds
> of narcotics and/or controlled substances, and/or which represent the
> proceeds of narcotics and/or controlled substances trafficking.

(Defs.' 56.1 ¶ 3, Defs.' Ex. B.)  Jones and "the search warrant team of Queens Narcotics" executed the search warrant.[8]  (Defs.' 56.1 ¶ 21; Pl.'s Dep. Tr. 134:19–25, 135:1–9; Search

---

[7]  (Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.)  Plaintiff argues that in violation of Rule 26(a)(1), Defendants have failed to disclose the names of witnesses and the existence of documents relevant to the case and that Defendants have failed to provide legal support for their claims of evidentiary privilege.  (Pl.'s 56.1 ¶ 2.)

[8]  Plaintiff contends that the search warrant did not authorize Defendants to execute a "no knock" search of the Apartment.  (Pl.'s 56.1 ¶ 3.)  Defendants assert that they "never characterized the search warrant as a 'no knock' warrant."  (Defs.' 56.1 Reply ¶ 3.)

Warrant dated Oct. 17, 2017 ("Search Warrant"), annexed to Gosling Decl. as Ex. B, Docket

Entry No. 67-2.)

    Defendants contend that upon searching the Apartment on October 18, 2017, at or

about 6:05 PM, they recovered:

> a quantity of heroin (no stamp), a quantity of cocaine, a quantity of crack/cocaine, a quantity of Xanax pills, a quantity of marijuana, a digital scale, narcotic paraphernalia[,] *i.e.*[,] a box of empty wax glassines and numerous zip locks, U.S. Postal Mail[,] . . . and a sum of . . . United States [c]urrency.[9]

(Defs.' 56.1 ¶¶ 21–22 (quoting Arrest Report IV, annexed to Gosling Decl. as Ex. F, Docket

Entry No. 67-6).)

    Plaintiff contends that Jones searched the Apartment without a valid search warrant,

that Defendants unlawfully entered the Apartment using the keys they took from his pants

pocket, that Defendants "did not have any documents [when] they secured [the] [A]partment,"

and that Defendants had not notified Plaintiff's "management" about their search of the

Apartment.  (Pl.'s 56.1 ¶¶ 2, 21; Dep. Tr. of Calvin Fonville dated Apr. 10, 2019 ("Pl.'s Dep.

Tr. II") 4:5–10, 6:17–24, annexed to Pl.'s 56.1 as Ex. C.)

### d.   Plaintiff's rearrest

    "Based on the drugs and paraphernalia recovered during the execution of the search

warrant, Plaintiff was re-arrested" later that day around 6:25 PM in the vicinity of the

Apartment for criminal possession of a controlled substance, criminal use of drug

paraphernalia, and criminal possession of marijuana.  (Defs.' 56.1 ¶ 23; Arrest Report IV.)

---

    [9]  Defendants argue that this fact should be deemed admitted because Plaintiff did not deny the statement with citation to admissible evidence.  (Defs.' 56.1 Reply ¶ 22.)

While in custody at the 107th Precinct, Plaintiff complained of back pain.[10]  Plaintiff contends that at around 9:30 PM that evening, approximately three hours and thirty minutes after his arrest and four hours after Defendants' search of the Apartment, Defendants asked him to sign a search warrant.  (Pl.'s 56.1 ¶ 2; Pl.'s Opp'n 2; Pl.'s Dep. Tr. 134:20–25, 135:1–16; Pl.'s Dep. Tr. II 4:5–10.)

### e.   Plaintiff's hospital visit

On October 20, 2017, on or about 2:25 AM, two members of the NYPD, other than Defendants, transported Plaintiff to the emergency room of Queens Hospital ("ER"), arriving at 2:40 AM, (Defs.' 56.1 ¶ 25; Pl.'s 56.1 ¶ 25), and was discharged from the ER approximately two hours after being admitted, around 4:18 AM, on October 20, 2017, (Defs.' 56.1 ¶ 32; Pl.'s 56.1 ¶ 32).[11]  While in the hospital, Plaintiff underwent visual, physical, and x-ray examinations and was diagnosed with "[a]cute lower back pain due to 'trauma'."[12]  (Pl.'s 56.1 ¶ 28; Defs.' 56.1 ¶¶ 26–27, 29; ER Records 2, annexed to Gosling Decl. as Ex. I, Docket Entry No. 67-9.)  The ER Records indicate that "[b]ack pain is very common in adults" and that because "back pain is rarely dangerous, most people can learn to manage this condition on their own."  (ER Records 10; Defs.' 56.1 ¶ 33 (quoting ER Records 10); Defs.' 56.1 Reply

---

[10]  (Defs.' 56.1 ¶ 24; Online Prisoner Arraignment Sheet, annexed to Gosling Decl. as Ex. H, Docket Entry No. 67-8.)

[11]  The parties state that Plaintiff was discharged on October 20, 2020, (Defs.' 56.1 ¶ 32; Pl.'s 56.1 ¶ 32), which appears to be a typographical error.  The Court assumes that the parties meant October 20, 2017.

[12]  Plaintiff asserts that "[t]rauma is caused by physical force" and that he suffered trauma due to "being assaulted . . . by . . . [D]efendants," (Pl.'s 56.1 ¶ 28), but Defendants contend that Plaintiff offers a faulty and unsupported "definition" of "trauma," (Defs.' 56.1 Reply ¶ 28).  In addition, Plaintiff asserts that certain pages of the ER Record are unreadable, (Pl.'s 56.1 ¶ 28), but Defendants maintain that the ER Record is "clearly legible though perhaps not perfect copies," (Defs.' 56.1 Reply ¶ 28).

¶ 33.)  Plaintiff's x-ray results were "negative for acute findings" and a medical provider concluded that he was "[s]table for discharge."  (ER Records 3.)  Plaintiff was prescribed a single one-time dose of ibuprofen but he never took the medication, (Defs.' 56.1 ¶ 30; Pl.'s 56.1 ¶ 30; Pl.'s Dep. Tr. 98:13–15), and was prescribed single doses of Maalox and methocarbamol, (Defs.' 56.1 ¶ 30; Pl.'s 56.1 ¶ 30).  Defendant contends that Plaintiff's diagnosis was based on his own self-reported complaint of injury.  (Defs.' 56.1 Reply ¶ 28; Defs.' 56.1 ¶ 28.)  Plaintiff testified at his deposition that he did not seek further medical treatment for any back injury because "it wasn't really that serious where [he] couldn't walk or maneuver, [he] just felt it would go away itself."  (Pl.'s Dep. Tr. 101:16–22; *see also* Defs.' 56.1 ¶ 35; Pl.'s 56.1 ¶ 35.)

The parties dispute whether Plaintiff complained of an eye injury at the ER and whether eye injuries or swelling were observed.  (Defs.' 56.1 ¶ 31, Pl.'s 56.1 ¶ 31.)  The ER Records make no mention of any eye injury.  (Defs.' 56.1 ¶ 34; Pl.'s 56.1 ¶ 34.)  Defendants assert that the ER Records are evidence that Plaintiff's chief complaint was lower back pain, that Plaintiff denied head trauma, and that Plaintiff never sought any further treatment for his eyes.  (Defs.' 56.1 Reply ¶¶ 31, 35; Pl.'s Dep. Tr. 52:16–18.)[13]  Plaintiff contends that there is no evidence that he did not complain of an eye injury, (Pl.'s 56.1 ¶ 31), and testified at his deposition that a "bruise appeared on his eyes four days after he was assaulted."  (Pl.'s 56.1 ¶ 36; Pl.'s Dep. Tr. 52:1–25.)

---

[13]  Plaintiff states that Defendants' Exhibit A, an excerpt of Plaintiff's deposition transcript dated October 2, 2019, is missing pages 53 to 59.  (Pl.'s 56.1 ¶ 36.)  Defendants assert that they served Plaintiff with two complete copies of his deposition transcript on November 7, 2019.  (Defs.' 56.1 Reply ¶ 36.)

### f.   Plaintiff's guilty plea

On April 25, 2018, Plaintiff pled guilty to criminal sale of a controlled substance

(heroin) in the second degree in violation of New York Penal Law Section 220.41(1), and on

August 13, 2018, the Supreme Court of the State of New York, Queens County, sentenced

him to six years of imprisonment.  (Defs.' 56.1 ¶ 19; Certificate of Disposition, annexed to

Gosling Decl. as Ex. G, Docket Entry No. 67-7.)

### g.   Discovery proceedings

On December 13, 2019, during a conference attended by Plaintiff, Magistrate Judge

Ramon E. Reyes Jr. extended the discovery deadline "so Defendants can respond to Plaintiff's

discovery request[]" for interrogatories.  (Min. Entry dated Dec. 13, 2019; Tr. dated Dec. 3,

2019, at 3:1–15, Docket Entry No. 40.)  On December 23, 2019, discovery closed.  (Min. Entry

dated Dec. 13, 2019.)  By letter dated December 26, 2019, Plaintiff moved to compel discovery,

stating that Defendants failed to provide adequate discovery.  (Letter dated Dec. 26, 2019,

Docket Entry No. 41.)  In denying the motion to compel discovery, Judge Reyes noted that

Plaintiff "ha[d] not identified specifically how [D]efendants' document responses were

inadequate" and that Plaintiff failed to raise such discovery objections during the December 13,

2019 conference.  (Order dated Jan. 9, 2020.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

*Barnes v. Fedele*, 813 F. App'x 696, 699 (2d Cir. 2020); *Nguedi v. Fed. Rsrv. Bank of New York*,

813 F. App'x 616, 617 (2d Cir. 2020).  The court must "constru[e] the evidence in the light most

favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Adamson v. Miller*, 808 F. App'x 14, 16 (2d Cir. 2020) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

In reviewing a motion for summary judgment involving a *pro se* litigant, "special solicitude should be afforded." *Gachette v. Metro N.-High Bridge*, 722 F. App'x 17, 19 (2d Cir. 2018) (alteration omitted) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)); *see also Essani v. Earley*, No. 13-CV-3424, 2021 WL 1579671, at *4 (E.D.N.Y. Apr. 22, 2021) (quoting *Graham*, 848 F.2d at 344). The court must "read his pleadings 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, this "does not relieve [the *pro se*] plaintiff of his duty to meet the requirements

10

necessary to defeat a motion for summary judgment." *Id.* (quoting *Jorgensen v. Epic/Sony Recs.*, No. 00-CV-9181, 2002 WL 31119377, at *1 (S.D.N.Y. Sept. 24, 2002)).

###### b.   Discovery objections

Plaintiff argues that he is prohibited from "substantiating all of his claims because . . . [D]efendants failed to turn over all discovery."  (Pl.'s 56.1 ¶ 13.)

Defendants contend that they "served [P]laintiff with . . . Rule 26 [d]isclosures and three [s]upplemental [d]isclosures with documents," that "Plaintiff did not make any request for documents that have remained unanswered," and that Plaintiff has not otherwise argued "that [D]efendants failed to respond to any such discovery request."  (Defs.' 56.1 Reply ¶ 13.)

Rule 56(d) of the Federal Rules of Civil Procedure "permits the district court to defer summary judgment or permit additional discovery when the nonmovant files an affidavit or declaration stating that, 'for specified reasons, it cannot present facts essential to justify its opposition.'" *Sura v. Zimmer, Inc.*, 768 F. App'x 58, 59 (2d Cir. 2019) (quoting Fed. R. Civ. P. 56(d)); *see also Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 306 (2d Cir. 2019) ("[Rule] 56(d) provides that a party opposing summary judgment based on incomplete discovery must file an affidavit explaining why such discovery is necessary." (citing Fed. R. Civ. P. 56(d))); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) ("[T]he failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (citing cases)).  "*Pro se* parties are not exempt from the requirements of [Rule] 56(d)." *Leckie v. Robinson*, No. 17-CV-8727, 2020 WL 5238602, at *8 (S.D.N.Y. Feb. 6, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 2114846 (S.D.N.Y. May 4, 2020); *see also Bradshaw v. Hernandez*, 788 F. App'x 756, 758 n.3 (2d Cir. 2019) ("Nor did the district court abuse its discretion in denying [the *pro se* plaintiff's] request to the extent it was

brought pursuant to Rule 56(d) . . . , as [he] did not file the supporting affidavit required by that [r]ule." (citing *Paddington Partners*, 34 F.3d at 1137–38)); *Parker v. Fantasia*, 425 F. Supp. 3d 171, 184 (S.D.N.Y. 2019) (concluding that "to the extent that [the *pro se* plaintiff] intends to seek additional discovery under Rule 56(d), his request is denied" because the plaintiff "[did] not submit[] an affidavit or declaration"); *Littlejohn v. Consol. Edison Co. of New York, Inc.*, No. 18-CV-6336, 2019 WL 3219454, at *6 (S.D.N.Y. July 17, 2019) (same).

The Court construes Plaintiff's discovery objections as requesting that the Court extend the time for discovery pursuant to Rule 56(d). *See Sura*, 768 F. App'x at 59 ("[The *pro se* plaintiff] argues that he would have proven causation if permitted to continue discovery. We construe this as an argument that the district court abused its discretion by failing to extend time for discovery pursuant to [Rule] 56(d).") Plaintiff did not file an affidavit or declaration pursuant to Rule 56(d) to provide sufficient grounds to support a conclusion that discovery was inadequate. Moreover, as Judge Reyes noted, Plaintiff "has not identified specifically how [D]efendants' document responses were inadequate" and Plaintiff failed to raise such discovery objections during the discovery conference on December 13, 2019. (Order dated Jan. 9, 2020; *see also Harrison v. County of Nassau*, No. 15-CV-2712, 2018 WL 5093257, at *18 (E.D.N.Y. Aug. 31, 2018) (noting that the *pro se* plaintiff failed to submit an affidavit as required by Rule 56(d) and that irrespective, his request for additional discovery failed on the merits), *report and recommendation adopted*, 2018 WL 4583491 (E.D.N.Y. Sept. 24, 2018), *aff'd*, 804 F. App'x 24 (2d Cir. 2020). Because "[i]t is well established that 'the trial court may properly deny further discovery' under Rule 56(d) 'if the nonmoving party has had a fully adequate opportunity for discovery,'" *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020) (quoting *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)), the Court declines to

deny summary judgment based on Plaintiff's conclusory allegation that Defendants failed to

meet discovery obligations.  *See Turner v. McDonough*, No. 18-CV-4038, 2021 WL 965626, at

*2 (S.D.N.Y. Mar. 15, 2021) (declining to allow for further discovery where the *pro se*

"[p]laintiff had more than enough time and opportunity to pursue discovery" and did not

"present[] any specific reasons why he was not able to obtain the discovery he . . . seeks during

the discovery phase" and the magistrate judge "did not see fit to defer consideration of the

summary judgment motion to allow for additional discovery"); *Corley v. Vance*, No. 15-CV-

1800, 2019 WL 3841939, at *13 (S.D.N.Y. Aug. 15, 2019) ("[The *pro se* plaintiff's] conclusory

allegations of incomplete discovery are an insufficient basis under Rule 56(d) to deny [the

motion for summary judgment]."); *Arriaga v. City of New York*, No. 06-CV-2362, 2008 WL

11411816, at *3 (S.D.N.Y. May 20, 2008) (denying a *pro se* plaintiff's request for additional

discovery because the defendants complied with their discovery obligations and the plaintiff had

a "full and fair opportunity to conduct discovery[,] . . . demonstrated an ability to obtain orders

from [the] [m]agistrate [j]udge . . . [, and] allowed the discovery period to close . . . without

pressing . . . for further relief").

  **c.** **Section 1983 claims**

   Defendants move for summary judgment on Plaintiff's claims of (1) unlawful entry and

search and (2) excessive use of force.  (Defs.' Mem. 1.)

   Plaintiff opposes Defendants' motion for summary judgment on his claims.  (Pl.'s Opp'n

1–2.)

   Under section 1983, individuals may bring a private cause of action against persons

"acting under color of state law" to recover money damages for deprivations of their federal or

constitutional rights.  *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014)

(quoting 42 U.S.C. § 1983).  To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations omitted); *see also Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019) (quoting *Vega*, 801 F.3d at 87–88).

### i.   Unlawful entry and search

Defendants argue that Plaintiff's claim of unlawful entry and search fails "because in searching [P]laintiff's apartment, . . . Jones acted pursuant to a valid search warrant." (Defs.' Mem. 5.)  In support, Defendants assert that (1) "the Court's issuance of a search warrant obviated the need to obtain either [P]laintiff's consent or that of his management company" to search the Apartment, (Defs.' Reply 2 (first citing U.S. Const. amend. IV; and then citing *Gem. Fin. Serv. v. City of New York*, 298 F. Supp. 3d 464, 489 (E.D.N.Y. Mar. 29, 2018)); (2) Plaintiff does not dispute "that, on October 17, 2017, [Judge] John F. Zoll of Queen's Criminal Court issued a search warrant for [P]laintiff's apartment" to be searched between 6 AM and 9 PM "for the purpose of obtaining, among other things, heroin, cocaine, other controlled substances, and narcotics paraphernalia (plastic bags, scales, records), U.S. currency representing proceeds of narcotics and/or controlled substances trafficking," (Defs.' Mem. 6–7); (3) "as acknowledged by [P]laintiff," Defendants executed the search warrant "at 6:05 [PM] on October 18, 2017" and did not violate the Fourth Amendment, (*id.* at 7); and (4) Plaintiff is precluded from arguing that Defendants "failed to knock at [the Apartment] door before entering" for the first time on summary judgment and, irrespective, Plaintiff "was not present in the Apartment at the time of the search and therefore does not know how the search was executed," (Defs.' Reply 2–3).

14

Plaintiff asserts that Defendants "execute[d] an illegal entry and search" of the Apartment.  (Pl.'s Opp'n 2; Pl.'s 56.1 ¶ 21.)  In support, Plaintiff argues that (1) Defendants' entry into the Apartment was unlawful because "there was no consent to search" or "written notice to the . . . [management of the Apartment]" about the search, (2) the search warrant was deficient because it "failed to describe the persons or things to be seized," and (3) the search warrant "was not authorized to be executed as a 'no knock' warrant."  (Pl.'s Opp'n 2; Pl.'s 56.1 ¶ 21.)

The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. amend. IV; *see also United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014).  "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020) (alteration omitted) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)).  "Warrantless entry is justified when there is both probable cause and exigency." *Dalessandro v. City of Nassau*, 758 F. App'x 165, 167 (2d Cir. 2019) (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam)).  "It is thus a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Chamberlain Est. of Chamberlain*, 960 F.3d at 105 (quoting *Welsh*, 466 U.S. at 749).

"A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020) (citing cases).  "A 'seizure' of personal property occurs for purposes of the Fourth Amendment if the police meaningfully interfere with an individual's possessory interests in that

15

property." *Id.* (first citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); and then citing *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018)).

Pursuant to the Fourth Amendment, "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria: (1) it 'must identify the specific offense for which the police have established probable cause'; (2) it 'must describe the place to be searched'; and (3) it 'must specify the items to be seized by their relation to designated crimes.'" *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting *United States v. Galpin*, 720 F.3d 436, 445–46 (2d Cir. 2013)). "A warrant that does not meet these requirements is facially invalid." *United States v. Gosy*, No. 16-CR-46, 2019 WL 948179, at *8–9 (W.D.N.Y. Feb. 27, 2019) (first citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); and then citing *United States v. Robinson*, No. 16-CR-545, 2018 WL 5928120, at *7 (E.D.N.Y. Nov. 13, 2018)); *see also Groh*, 540 U.S. at 557 (holding that search warrant which failed to particularly describe the things to be seized was facially invalid); *Robinson*, 2018 WL 5928120, at *7 ("The absence of any language particularizing the relevant crimes makes the warrant facially invalid." (citing *Galpin*, 720 F.3d at 447)). However, "[t]he Fourth Amendment does not require a perfect description of the data to be searched and seized." *United States v. White*, No. 17-CR-611, 2018 WL 4103490, at *10 (S.D.N.Y. Aug. 28, 2018) (quoting *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017)). Indeed, "the particularity requirement is not usually interpreted to mean the officers must be left with no discretion whatsoever." *United States v. Ukhuebor*, No. 20-MJ-1155, 2021 WL 1062535, at *4–5 (E.D.N.Y. Mar. 19, 2021) (quoting *United States v. Messalas*, No. 17-CR-339, 2020 WL 4003604, at *5–6 (E.D.N.Y. July 14, 2020)).

"[A] search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable." *Siddiqui v. Rocheleau*, 818 F. App'x 20, 22 (2d Cir. 2020) (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017)).  A search pursuant to such a validly issued search warrant does not require consent.  *See Bumper v. North Carolina*, 391 U.S. 543, 553 (1968) ("Of course, if the officers had a valid search warrant, no consent was required to make the search lawful."); *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *54 n.38 (S.D.N.Y. Mar. 26, 2021) (citing *Bumper*, 391 U.S. at 553); *cf. Walter v. United States*, 447 U.S. 649, 656 (1980) ("When an official search is properly authorized — whether by consent or by the issuance of a valid warrant — the scope of the search is limited by the terms of its authorization.").

> **1. Defendants had a warrant to enter and search the Apartment and therefore were not required to obtain consent to do so**

Plaintiff concedes that Defendants had a warrant to search the Apartment and does not contend that the warrant was issued without probable cause or that Defendants' reliance on the information they used to obtain the warrant was objectively unjustified.  (Pl.'s 56.1 ¶ 21); *see also United States v. Leon*, 468 U.S. 897, 926 (1984) (holding that "suppression [of evidence found with a warrant] is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause").  Indeed, the warrant directed Defendants "to make a search of the [Apartment]," which expressly authorizes entry.  (Search Warrant); *Caniglia v. Strom*, 593 U.S. ---, ---, 141 S. Ct. 1596, 1599 (2021) (recognizing that "searches and seizures pursuant to a valid warrant" permit "invasions of the home and its curtilage"); *Carpenter v. United States*, 585 U.S. ---, ---, 138 S. Ct. 2206, 2228 (2018) (Kennedy, J., dissenting) (noting that "a warrant allows the [g]overnment to enter and seize"); *In re Search Warrant*, No. 16-MAG-7063, 2016 WL

7339113, at *3 (S.D.N.Y. Dec. 19, 2016) ("The judicial determination whether to grant a search warrant, and thus allow the government to *enter and search* private property, directly affects individuals' substantive rights." (emphasis added) (citing *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208, 2008 WL 5667021 (N.D.N.Y. July 14, 2008))); *United States v. Kolokouris*, No. 12-CR-6015, 2015 WL 7176364, at *5 (W.D.N.Y. Nov. 13, 2015) ("[F]or the government to enter and search commercial premises, it must either get a search warrant or rely on one of the carefully-delineated exceptions to the warrant requirement." (citing *Katz v. United States,* 389 U.S. 347, 357 (1967))); *cf. United States v. Banks*, 540 U.S. 31, 36–37 (2003) ("[E]ven when executing a warrant silent about [no-knock entry], if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in." (citing *Richards v. Wisconsin,* 520 U.S. 385, 394 (1997))).

The warrant was signed by Judge Zoll of Queens County Criminal Court and dated October 17, 2017, which is prior to the Incident.  (Search Warrant.)  Thus, Defendants did not require the consent of Plaintiff or the Apartment management to enter the Apartment because the search warrant authorized Defendants to enter the Apartment and conduct a search.  *See Falls*, 2021 WL 1164185, at *54 n.38 ("[T]he second visit to [the hospital] occurred after the police had obtained a search warrant, and thus, the police and medical staff did not need [the plaintiff's] consent to execute a search pursuant to the warrant." (first citing *Michigan v. Tyler*, 436 U.S. 499, 506 (1978); and then *Bumper*, 391 U.S. at 553 (Harlan, J., concurring))).

Because Defendants entered and searched the Apartment pursuant to a validly issued search warrant, Plaintiff cannot state a Fourth Amendment claim based on the lack of consent. *See Griffin-Robinson v. Warhit*, No. 20-CV-2712, 2020 WL 2306478, at *4 (S.D.N.Y. May 6, 2020) (holding that the plaintiff failed to state a Fourth Amendment claim where her home was

18

searched pursuant to a warrant and she "d[id] not allege any facts that would undermine the presumed validity of the warrant, such as any facts suggesting that the police officers obtained it through false statements or other misrepresentations"); *Gonzalez v. Yepes*, No. 19-CV-267, 2019 WL 2603533, at *6 (D. Conn. June 25, 2019) ("Probable cause for the searches is presumed because the [d]efendants conducted the searches pursuant to a warrant . . . [and the p]laintiff is unable to overcome this presumption because there are no allegations that any [d]efendant intentionally or recklessly made material false statements or omissions in the warrant affidavits."); *Reynolds v. McCoon*, No. 14-CV-255, 2016 WL 7229131, at *3 (W.D.N.Y. Dec. 14, 2016) ("[B]ecause a valid warrant existed, and because [the plaintiff] does not allege that the warrant was want of probable cause, [the plaintiff] fails to state a Fourth Amendment claim.").

### 2.    The search warrant satisfied the particularity requirement

The search warrant adequately described the items to be seized from the Apartment. The warrant stated that the following items may be seized:

> heroin, cocaine, controlled substances, narcotics paraphernalia including but not limited to plastic bags, diluents, . . . scales, records or other evidence of ownership or use of [Plaintiff's apartment], records of narcotics and/or controlled substances transactions, . . . [and] such United States currency as used to purchase narcotics and/or controlled substances, and/or which represent the proceeds of narcotics and/or controlled substances, and/or which represent the proceeds of narcotics and/or controlled substances trafficking.

(Defs.' 56.1 ¶ 3; Search Warrant.) These items are defined with sufficient particularity. *See United States v. Washington*, 48 F.3d 73, 78 (2d Cir. 1995) ("[T]he warrant . . . recited the specific categories of drug-related evidence sought. Given the nature of [the defendants'] enterprise, the warrant described with sufficient particularity the criminal instrumentalities to be found at their premises."), *cert. denied*, 515 U.S. 1151 (1995); *United States v. Riley*, 906 F.2d 841, 844–45 (2d Cir. 1990) (concluding that a warrant was sufficiently particular where it

"authorized the agents to search for records of the distribution of cocaine and records of the investment of drug proceeds and illustrated permissible types of the latter records by listing bank records, business records, and safety deposit records"); *United States v. Ukhuebor*, No. 20-MJ-1155, 2021 WL 1062535, at *4–5 (E.D.N.Y. Mar. 19, 2021) (concluding that a warrant that "defined items to be seized to include 'all records relating to' violations of securities fraud, wire fraud, and money laundering statutes" and "[a]ny phones, computers, or other electronic devices that reasonably appear to contain [such] evidence" satisfied the particularity requirement); *United States v. Davis*, No. 17-CR-615, 2021 WL 826261, at *7 (E.D.N.Y. Mar. 3, 2021) (concluding that a search warrant that stated "that all items to be seized from the residence and vehicle 'constitute evidence, fruits and instrumentalities of violations of [specific statutes],'" described "the places to be searched" as "a single family, center hall colonial home, with an attached garage," and "delineate[d] the specific items to be seized and relate[d] them to the drug and firearms crimes at issue" satisfied the particularity requirement); *United States v. Moody*, No. 20-CR-6070, 2021 WL 202698, at *9 (W.D.N.Y. Jan. 19, 2021) (concluding that a warrant that "authorized the search for and seizure of specified evidence relevant to drug trafficking, such as, narcotics, drug records, photographs and video tapes depicting individuals involved in narcotics violations, and bank records" was "precisely the type of warrant that courts routinely uphold against overbreadth challenges"), *report and recommendation adopted*, 2021 WL 1054372 (W.D.N.Y. Mar. 19, 2021); *Jones v. Meehan*, No. 14-CV-6402, 2018 WL 459662, at *11 (S.D.N.Y. Jan. 16, 2018) (concluding that a search warrant that "described the things to be seized — 'evidence of proceeds from a string of burglaries' including electronics, currency, and evidence of ownership — and the place to be searched" was not deficient).

Accordingly, the Court finds that the search warrant was defined with sufficient particularity.

### 3.   Plaintiff is precluded from raising the issue of the execution of the warrant for the first time on summary judgment

"Generally, parties may not amend their complaints through their submissions on summary judgment." *Kravitz Leis*, 803 F. App'x 547, 548–49 (2d Cir. 2020) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)), *cert. denied sub nom. Kravitz v. Leis*, No. 20-CV-6717, 2021 WL 769739 (U.S. Mar. 1, 2021); *see also Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations [the *pro se* plaintiff] raised for the first time in response to [the] summary judgment motion." (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998))).  "[I]t it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment." *Warren v. Ewanciw*, No. 15-CV-8423, 2019 WL 589488, at *8 n.17 (S.D.N.Y. Feb. 13, 2019) (alteration in original) (quoting *Scott v. City of New York Dep't of Correction*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009)) ("To the extent [the plaintiff] seeks to bring a separate failure-to-intervene claim against [the defendant], the [c]ourt cannot consider it because he did not plead this claim in his [c]omplaint."), *aff'd*, 445 F. App'x 389 (2d Cir. 2011); *Byrd v. KTB Cap. LLC*, No. 16-CV-6017, 2019 WL 652529, at *4 (W.D.N.Y. Feb. 15, 2019) ("It is clearly improper for a litigant to assert new claims for the first time at the summary judgment stage." (citing *Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, 305 F. Supp.3d 486, 531 (S.D.N.Y. 2018) (concluding that the plaintiff "cannot now amend their complaint merely by raising new facts or theories in their briefs"))).

The Court declines to address Plaintiff's argument that Defendants failed to properly execute the search warrant pursuant to the knock-and-announce rule because he raised it for the

21

first time on summary judgment.[14]  *See Harenton Hotel, Inc. v. Village of Warsaw*, 749 F. App'x

17, 19 (2d Cir. 2018) ("The district court properly held that [the appellants'] substantive due

process claim, referenced in their opposition to the motion for summary judgment, was not

adequately pled." (citing cases)); *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (same);

*Perez v. City of New York*, No. 16-CV-7050, 2020 WL 1272530, at *13 n.8 (S.D.N.Y. Mar. 16,

2020) ("Because the . . . claims pled in the [c]omplaint do not include claims for failure to

provide a reasonable accommodation and discriminatory termination, [the plaintiff] cannot raise

these claims at summary judgment." (citing cases)), *aff'd*, 843 F. App'x 406 (2d Cir. 2021);

*Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 489 n.32 (S.D.N.Y. 2009) ("[The

plaintiff] raises this claim for the first time in her opposition papers to the instant motion.

Therefore, we will not consider this claim as a basis for liability here.").[15]

---

[14]  The Court notes, however, that Plaintiff was at the precinct when the search warrant was executed, (Pl.'s 56.1 ¶ 21), and has failed to provide any factual support for his conclusory assertion that Defendants failed to properly execute the search warrant.  *See United States v. Alvarado*, No. 88-CR-110, 1988 WL 34959, at *2 (S.D.N.Y. Apr. 7, 1988) ("It is claimed that the officers did not 'knock or in any way announce their presence' before bursting through the door.  There is no factual support for such a claim; there is merely the unsworn hearsay of [the plaintiff] himself." (citing *United States v. Gillette,* 383 F.2d 843, 848 (2d Cir. 1967))); *see also United States v. Sanchez*, 35 F.3d 673, 678 (2d Cir. 1994) (noting that because the plaintiff was "asleep until the police had battered down the door and gained access to the [a]partment, . . . he could not testify whether they knocked and announced their purpose before breaking through the [a]partment door").

[15]  Defendants argue that the officers are entitled to qualified immunity on Plaintiff's unlawful entry and search claims.  (Defs.' Mem. 14–15.)  Because as explained above, Plaintiff fails to show that the entry and search were unlawful, the Court does not address whether the officers are entitled to qualified immunity on these claims.  *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("When a defendant officer . . . invokes qualified immunity to support a motion for summary judgment, a court must first consider [whether] . . . the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violate[d] a constitutional right[.]  If [it did not], 'there is no necessity for further inquiries concerning qualified immunity.'" (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))).

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's claim of unlawful entry and search.[16]

### ii.   Excessive force

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because (1) Plaintiff cannot establish Defendants' personal involvement and (2) "at most[,] [P]laintiff has adduced evidence of only *de minimis* use of force."  (Defs.' Mem. 13.) The Court addresses each argument in turn.

---

[16]   Plaintiff also argues that Jones illegally took his "[A]partment keys out of his right pocket, brought him to the police station and then went to [his] [A]partment to execute an illegal entry and search."  (Pl.'s Opp'n 2; Pl.'s 56.1 ¶ 21.)  As discussed above, because of the valid search warrant, Defendants lawfully entered the Apartment pursuant to the search warrant. Moreover, Defendants lawfully used Plaintiff's key to unlock the door to the Apartment because they lawfully obtained the key from Plaintiff during a search incident to arrest.  (Pl.'s 56.1 ¶¶ 2, 21); *see United States v. Cushnie*, No. 14-CR-119, 2014 WL 7447149, at *10 (S.D.N.Y. Dec. 31, 2014) ("Because the cell phone, keys, and wallet were 'within [the defendant's] immediate control,' they were properly seized incident to his arrest." (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 (1969))).  The use of the key to enter the Apartment is lawful because Defendants were authorized to execute the search warrant with or without a key.  (Search Warrant); 18 U.S.C. § 3109 (noting circumstances where an "officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant"); *United States v. Francis*, 646 F.2d 251, 254 (6th Cir. 1981) (concluding that evidence gathered from a business property was properly admitted at trial where the government had a search warrant and used keys obtained from the defendant during an arrest to open the property); *United States v. Miller*, No. 12-CR-20335, 2013 WL 119688, at *5 (E.D. Mich. Jan. 9, 2013) (declining to suppress evidence found inside a residence as "it d[id] not matter that the officers used a key found in [a] traffic stop to open the door[] because the officers were authorized to enter the residence with or without a key" and "even if the allegedly unlawful traffic stop had never occurred, the officers would have found the evidence inside the house through the lawful execution of [the existing] search warrant"); *People v. Thomas*, 64 N.Y.S.3d 702, 702 (2017) (concluding that a search pursuant to a warrant and "the police officer's use of [the] defendant's key to enter the residence [did not] otherwise render[] the search invalid" (citing *People v. Binns*, 749 N.Y.S.2d 615, 617 (2002))).  Thus, the Court finds that Defendants did not engage in an unlawful entry or search of the Apartment based on the use of the seized key.

### 1.   Personal involvement

Defendants argue that Plaintiff cannot establish the personal involvement of Defendants as required under section 1983 because "[P]laintiff has not provided any evidence demonstrating that either [D]efendant used excessive force against him or that they had a reasonable opportunity to intervene in any such violation and failed to do so."  (*Id.* at 9.)  In support, Defendants argue that (1) "Yu did not employ any excessive force . . . since according to [P]laintiff[,] . . . Yu was at the precinct when [P]laintiff arrived and was not present at the scene of [the] first arrest," (2) "[P]laintiff could not testify as to whether . . . Jones punched him, kicked him, brought him to the ground, or placed him in handcuffs," and (3) "the mere presence of . . . Jones at the scene of the [I]ncident is insufficient . . . to establish personal involvement."  (*Id.* at 10.)

Plaintiff testified at his deposition that he "assum[ed]" Yu was present at the BP gas station during his arrest, (Pl.'s Dep. Tr. 72:8–14), that Jones "was amongst the crowd of officers that w[ere] beating [him] up," (*id.* at 72:20–25), and that he was "not sure" whether Defendants kicked, punched, or brought him to the ground, (*id.* at 81:9–25, 82:1).  He asserts that Defendants "beat him senseless," "handcuffed, slammed [him] to the ground, . . . punched and kicked" him, (Pl.'s Opp'n 8), Defendants were the "arresting officers," and that "Jones made the arrest and [prepared] the arrest report," (Pl.'s 56.1 ¶¶ 10, 20).

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."  *Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*,

449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this [c]ircuit that personal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))).  As the Second Circuit recently made clear, "there is no special rule for supervisory liability," and to find a state official liable under section 1983, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."  *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Being in the chain of command is not sufficient to satisfy personal involvement as the "violation must be established against the supervisory official *directly*."  *Id.* at 618.

### A.   Yu

Plaintiff testified at his deposition that he "assum[ed]" Yu was one of the officers at the BP gas station during his arrest, (Pl.'s Dep. Tr. 72:8–14), he saw Yu "[a]t one point" at "the precinct when they took [him] out of the car," (*id.* at 72:15–19), and that he was "not sure" whether Yu kicked, punched, or brought him to the ground, (*id.* at 81:9–25, 82:1).  Plaintiff further asserts that Defendants were the "arresting officers," (Pl.'s 56.1 ¶¶ 10, 20), and that they "beat him senseless," "handcuffed, slammed [him] to the ground, . . . punched and kicked" him, (Pl.'s Opp'n 8).  Contrary to Defendants' assertion, (Defs.' Mem. 10), a reasonable jury could understand Plaintiff's testimony to mean that Yu was present at the BP gas station during his arrest and was involved with transporting him to the precinct, which suggests personal involvement in the arrest, the source of Plaintiff's excessive force claim.  *See Rose v. Garritt*, No. 16-CV-3624, 2020 WL 409751, at *7 (S.D.N.Y. Jan. 24, 2020) (denying summary judgment on the basis of a lack of personal involvement where it was disputed whether the defendant

officer "was present only after the alleged assault"); *Roman v. City of New York*, No. 17-CV-
2697, 2020 WL 1516336, at *7 (S.D.N.Y. Feb. 4, 2020) (noting that although the plaintiff
testified that the defendant "was his arresting officer" and evidence showed that a nonparty was
actually the arresting officer, a reasonable jury could conclude that the defendant "was *present*"
at the plaintiff's arrest), *report and recommendation adopted*, 2020 WL 1503639 (S.D.N.Y. Mar.
29, 2020); *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 626 (D. Conn. 2016), *as
amended* (Aug. 9, 2016) ("Though [the plaintiff] is unable to identify the particular officers
involved in the punching and kicking, . . . [i]f the jury is able to determine the identity of the two
officers who took [the plaintiff] to the police cruiser, it would be able to reasonably find that
those two officers were also responsible for punching and kicking [the plaintiff] . . . ."); *Alicea v.
City of New York*, No. 13-CV-7073, 2016 WL 2343862, at *4 (S.D.N.Y. May 3, 2016) (noting
that a reasonable jury could conclude that the defendant, who was the driver of the police vehicle
used to transport the plaintiff to the precinct, was present at the arrest); *see also Walker v. Raja*,
No. 17-CV-5202, 2020 WL 606788, at *5 (E.D.N.Y. Feb. 7, 2020) (noting that "[o]wing to the
fact that [the plaintiff] is incarcerated and proceeding *pro se*, a paucity of evidence ha[d] been
generated in discovery; indeed, . . . the only party deposed . . . was [the plaintiff]" and
concluding that the presence of the defendants was disputed in the absence of "evidence that the
[c]ourt presumes [the defendants] have access to and would have produced if it existed").  To the
extent that Plaintiff's testimony may be interpreted to mean that Plaintiff only saw Yu *after*
arriving at the precinct, the conflicting deposition testimony creates a genuine dispute as to the
material fact of Yu's presence and involvement in Plaintiff's arrest.  *See Snead v. City of New
York*, 463 F. Supp. 3d 386, 399 (S.D.N.Y. 2020) (concluding that although the plaintiff "at times
suggested that only two officers were present" and "testified that she observed *three* police

officers," it was unclear whether the defendants were personally involved in the plaintiff's stop or arrest "[b]ecause there [wa]s conflicting testimony"), *reconsideration denied sub nom. Snead v. LoBianco*, No. 16-CV-9528, 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021); *Laster v. Mancini*, No. 07-CV-8265, 2013 WL 5405468, at *25 (S.D.N.Y. Sept. 25, 2013) (concluding that "the inconsistencies between [the] plaintiff's allegations and his testimony [we]re not sufficient to reject his testimony on summary judgment, and that [the] plaintiff has put forward sufficient evidence of personal involvement by [the] defendants").

## B. Jones

Similar to Yu, there is sufficient evidence that Jones was personally involved with Plaintiff's arrest. (Defs.' 56.1 ¶ 11 (stating that "Jones arrested [P]laintiff"); *see also* Arrest Report.) Jones arrested Plaintiff and his name appears on Plaintiff's arrest paperwork, (Defs.' 56.1 ¶ 11; Arrest Report), and, according to Plaintiff's testimony, during the arrest — where he "was handcuffed, slammed to the ground, then punched and kicked" — (Pl.'s 56.1 at 1), Jones "was amongst the crowd of officers that . . . beat[] [him]," (Pl.'s Dep. Tr. 72:20–25). Thus, a jury could find that Jones was personally involved in the use of force that Plaintiff alleges amounts to excessive force. *See Walker*, 2020 WL 606788, at *5 (noting that "there remain factual disputes regarding what each of the [d]efendant [o]fficers did during the struggle with [the plaintiff] and the degree of force each officer used" and declining to grant summary judgment on excessive force claim for lack of personal involvement "[i]n the absence of evidence that [the defendant officers] were not present — evidence that the [c]ourt presumes [d]efendants have access to and would have produced if it existed").

Accordingly, the Court finds that a jury could reasonably find that Defendants were personally involved in the alleged use of excessive force based on Plaintiff's testimony and Defendants' admission that Jones arrested Plaintiff.

### 2.   Reasonableness of force used and injury

Defendants argue that Plaintiff's excessive force claim fails because "he has adduced evidence of only *de minimis* injuries, suggestive of *de minimis* use of force."  (Defs.' Mem. 11.) In support, Defendants assert that "[P]laintiff's allegations that he was 'beat and harmed physically' are unsupported by the medical records."  (*Id.* (quoting Am. Compl. 4).)

Plaintiff argues that he "was arrested for a non[]violent drug offense" and "never attempted to resist arrest" but that Defendants handcuffed, "slammed, kicked, and punched" him "repeatedly."  (Pl.'s Opp'n 2.)

"The Fourth Amendment prohibits the use of excessive force in making an arrest." *Williams v. Nat'l R.R. Pass. Corp. (Amtrak)*, 830 F. App'x 46, 48–49 (2d Cir. 2020) (alteration omitted) (quoting *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015)).  Because the Fourth Amendment's test is one of objective reasonableness, the inquiry is fact-specific and requires a balancing of various factors.  *Id.*  When determining whether the force applied was "excessive," a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Id.* (first quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010); and then citing *Brown*, 798 F.3d at 100); *see also Concepcion v. N.Y.C. Dep't of Educ.*, 836 F. App'x 27, 29 (2d Cir. 2020) (quoting *Tracy*, 623 F.3d at 96).  However, "[n]ot every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968))).  Courts must therefore "evaluate the record 'from the perspective of a reasonable officer at the scene, rather than with the [twenty–twenty] vision of hindsight.'" *Tracy*, 623 F.3d at 96 (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)).  "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Concepcion*, 836 F. App'x at 29 (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

"[T]he extent of injury" is a "relevant" but non-dispositive factor in evaluating an excessive force claim. *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010).  "[I]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).  "[A] very minimal injury" may therefore be "'sufficient to trigger potential liability' for excessive force" under the right circumstances. *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 176–77 (E.D.N.Y. 2010) (quoting *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009)); *see also Hayes v. N.Y.C. Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising." (citing *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004))).

There are disputed issues of fact that preclude a finding that Defendants' use of force was reasonable.  There is no evidence that Plaintiff posed a threat to the officers or the general public,

and the parties dispute whether Defendants grabbed, punched, and kicked Plaintiff at the BP gas station and whether Defendants were one of the officers that "threw [Plaintiff] down" to the ground.  (Pl.'s Dep. Tr. 71:1–25, 72:1–3, 78:4–16, 81:9–25, 82:1–3; Defs.' Reply 9); *see Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 254 (2d Cir. 2020) ("[O]ur caselaw makes clear that it is unconstitutional for officers to strike an individual who is compliant and does not pose an imminent risk of harm to others.").  While Defendants contend that "there is simply no evidence . . . that anyone . . . punched or kicked [P]laintiff," (Defs.' Reply 9), a reasonable jury could credit Plaintiff's testimony and find that Defendants were involved in bringing Plaintiff "to the ground," (Defs.' 56.1 ¶ 9), and that kicking and punching him, (Pl.'s Dep. Tr. 71:24–25, 72:1–3), was an unreasonable use of force in view of the minor nature of the alleged crime and the lack of evidence that Plaintiff posed a threat to anyone or attempted to flee.  *See Young v. Cabrera*, No. 18-CV-3028, 2020 WL 7042759, at *7 (E.D.N.Y. Nov. 30, 2020) ("[The plaintiff] testified that three officers 'started kicking [him] [and] stomping [him]' . . . [and] [t]his 'testimony alone' is ordinarily 'independently sufficient to raise a genuine issue of material fact.'" (second, third, and fourth alterations in original) (quoting *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019))); *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 267 (S.D.N.Y. 2013) (finding that disputed facts as to whether the "arresting officers punched and kicked [the plaintiff] and that his finger began to bleed" raised "issues of fact which may only be resolved by a jury"); *Johnson v. City of New York*, No. 05-CV-7519, 2008 WL 4450270, at *6 (S.D.N.Y. Sept. 29, 2008) (denying summary judgment to officer because there was a genuine issue of fact as to whether he "punched plaintiff twice in the head and/or neck area").

Moreover, the lack of evidence of medical treatment for Plaintiff's injury does not support dismissal of Plaintiff's claim.  Plaintiff contends that he suffered lower back pain and

eye injury but did not seek medical treatment, (Pl.'s Dep. Tr. 52:16–18, 101:16–22), but that a "bruise appeared on his eyes four days after he was assaulted," (Pl.'s Dep. Tr. 52:1–25).  A reasonable jury may ultimately determine that the lack of medical treatment defeats Plaintiff's claim, but a jury, not the Court, must make this determination.  *See Robison*, 821 F.2d at 924 ("While [the plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, the failure is not fatal to her claim."); *Graham v. City of New York*, 928 F. Supp. 2d 610, 618–19 (E.D.N.Y. 2013) (denying summary judgment of the plaintiff's Fourth Amendment excessive force claim where the plaintiff complained that he was forcibly removed from his car and handcuffed without justification and, although he experienced no lasting damage, suffered immense pain and swelling); *Laporte v. Fisher*, No. 11-CV-9458, 2012 WL 5278543, at *3–4 (S.D.N.Y. Oct. 24, 2012) (finding that a punch to the plaintiff's stomach, which caused him to lose his breath, could constitute excessive force if done to harass the plaintiff); *Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2012) (denying summary judgment where the plaintiff was treated for bruising at a hospital and discharged with Motrin); *Lucky v. City of New York*, No. 03-CV-1983, 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (denying the defendants' motion for summary judgment on plaintiff's excessive force claim and finding that "[w]hile [the plaintiff's] injuries appear [to be] *de minimis*, his statements that he was shoved in the police car in a manner that injured his shoulder" created a disputed issue of material fact).

Further, because there are disputed issues of material fact as to the reasonableness of the force used to arrest Plaintiff, for the same reasons, the Court denies Defendants' motion for summary judgment based on qualified immunity for the excessive force claim.  *See Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) (affirming the district court's denial of summary

31

judgment based on qualified immunity where the record contained disputed issues of fact);

*Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not

determine whether the officers reasonably believed that their force was not excessive when

several material facts were still in dispute, summary judgment on the basis of qualified immunity

was precluded." (collecting cases)); *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 479

(E.D.N.Y. 2016) ("[T]here are questions of material fact as to whether [the officer's] use of force

during the course of [the plaintiff's] arrest was objectively reasonable.  Those questions of fact

preclude summary judgment on qualified immunity grounds."); *Smith v. Fields*, No. 95-CV-

8374, 2002 WL 342620, at *6 n.9 (S.D.N.Y. Mar. 1, 2002) (finding that allegations that the

plaintiff was "slapped and kicked about the face" were sufficient to defeat a claim of qualified

immunity at the summary judgment stage); *Nogue v. City of New York*, No. 98-CV-3058, 1999

WL 669231, at *9 (E.D.N.Y. Aug. 27, 1999) (finding that, where the officer contested plaintiff's

allegation that the officer "kicked and punched him while he was lying on the ground," "a trial

must be held to decide the facts upon which the claim of immunity rests").

Accordingly, the Court denies Defendants' motion for summary judgment as to the

excessive force claim.

**b.   Plaintiff's state law claim**

Defendants argue that Plaintiff's state law claim for negligence in causing the loss of

personal property is barred because Plaintiff failed to file a notice of claim with the New York

City Comptroller's Office within ninety days of the Incident — January 16, 2018 — the deadline

for filing.  (Defs.' Mem 18.)  In addition, Defendants argue that (1) Plaintiff failed to make an

application to file a late notice of claim and Defendants would be "extremely prejudice[d]" were

the Court to grant such an application, (2) Plaintiff can no longer file the notice of claim under

section 50-e(5) because the filing would be beyond one year and ninety days after his claims have accrued, and (3) Plaintiff's silence about his state law claims suggests that he has abandoned such claims at least as to the allegedly missing property.  (*Id.* at 16–18; Defs.' Reply 10.)

Plaintiff does not address Defendants' notice-of-claim arguments.  (*See* Pl.'s Opp'n.)

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis omitted) (first citing *Felder v. Casey*, 487 U.S. 131, 151 (1988); and then citing *Fincher v. County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997)).  Section 50-e provides that to proceed on a state tort action "against a municipality or any employee thereof, a plaintiff must file a notice of claim within ninety days after his claim accrues." *Helwing v. City of New York*, No. 18-CV-3764, 2021 WL 781794, at *7 (E.D.N.Y. Mar. 1, 2021) (citing N.Y. Gen. Mun. Law § 50-e); *see also Allen v. Antal*, 665 F. App'x 9, 14 (2d Cir. 2016) (dismissing a case for failure to file a timely notice of claim pursuant to section 50-e); *Hardy*, 164 F.3d at 795 (2d Cir. 1999) (same).  The extension of the time to serve a notice of claim under section 50-e(1)(a) "shall not exceed the time limited for the commencement of an action."  N.Y. Gen. Mun. Law § 50–e(5) ("The extension shall not exceed the time limited for the commencement of an action by the claimant"); *Doyle v. 800 Inc.*, 421 N.Y.S.2d 379, 380 (1979) ("Under [section 50-i] the period runs . . . from the happening of the event"); *see also Bloomfield Bldg. Wreckers, Inc. v. City of Troy*, 41 N.Y.2d 1102, 1103 (1977).  When a plaintiff asserts a state law cause of action against a municipality, including "any officer, agent, or employee thereof," a one-year-and-ninety-day

statute of limitations applies.[17] *Conte v. County of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014)

(quoting N.Y. Gen. Mun. Law § 50-i); *see also Terry v. City of Suffolk*, 654 F. App'x 5, 6 (2d

Cir. 2016) (dismissing claims against village officials as time-barred).

Plaintiff was required to file a notice of claim in order to assert a state law claim against

NYPD officers, who are City of New York employees. *See Best v. Town of Clarkstown*, 61 F.

App'x 760, 763 (2d Cir. 2003) ("New York law requires a plaintiff to file [a notice of claim]

before suing a police officer."); *Johnson v. City of New York*, No. 15-CV-6915, 2019 WL

294796, at *13 (S.D.N.Y. Jan. 23, 2019) (analyzing a plaintiff's compliance with the notice-of-

claim requirement in bringing state law claims against NYPD officers); *Ruiz v. Herrera*, 745 F.

Supp. 940, 944 (S.D.N.Y. 1990) ("[T]he filing of a notice of claim is a prerequisite to filing a

civil action in tort against an on-duty police officer."). Plaintiff does not allege that he filed a

---

[17]  Section 50-e(7) of the New York General Municipal Law provides that "[a]ll
applications under this section shall be made to the supreme court or to the county court." N.Y.
Gen. Mun. Law § 50-e(7). "Although the Second Circuit has not ruled on [the] issue, [federal]
district courts in the Second Circuit have consistently held that they lack jurisdiction to consider
such applications." *Cardinali v. County of Monroe*, No. 14-CV-6558, 2016 WL 1023323, at *7
(W.D.N.Y. Mar. 8, 2016) ("[I]t is unclear whether federal courts even have jurisdiction to
entertain applications for extensions of time under [section] 50-e(5)." (citing *Corcoran v. N.Y.
Power Auth.*, 202 F.3d 530, 540 (2d Cir. 1999))); *see also Warmin v. N.Y.C. Dep't of Educ.*, No.
16-CV-8044, 2018 WL 1441382, at *7 (S.D.N.Y. Mar. 22, 2018) ("[The plaintiff's] claim fails
in light of [section] 50-e(7), under which an application to file a late notice of claim must be
made in state court." (citing N.Y. Gen. Mun. Law § 50-e(7))); *Dodson v. Bd. of Educ. of the
Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 250 (E.D.N.Y. 2014) ("The Second
Circuit has not definitively ruled on whether a federal district court may grant a request to extend
time to serve the notice of claim." (alteration omitted) (quoting *Jackson v. City of New York*, 29
F.Supp.3d 161, 181, 2014 WL 1010785, at *13 (E.D.N.Y. Mar. 17, 2014))); *In re Dayton*, 786 F.
Supp. 2d 809, 824–25 (S.D.N.Y. 2011) (same); *Humphrey v. County of Nassau,* No. 06-CV-
3682, 2009 WL 875534, at *21 (E.D.N.Y. Mar. 30, 2009) ("This [c]ourt agrees with the
overwhelming weight of authority among district courts in the Second Circuit and finds that
[s]ection 50-e(7) permits only certain state courts . . . to consider and to grant an application for
an extension of time in this context." (alteration omitted) (collecting cases)); *Henneberger v.
County of Nassau*, 465 F. Supp. 2d 176, 200 (E.D.N.Y. 2006) (collecting cases). Plaintiff has
not sought to file a late notice of claim and the Court therefore does not decide whether it has
jurisdiction to consider such an application.

notice of claim with the City of New York, or that he did so within ninety days of the event that gave rise to his claim on October 18, 2017.[18]

Accordingly, the Court dismisses the state law claim for failure to file a timely notice of claim.[19]

## II. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in part and denies it in part.  The Court grants Defendants' motion for summary judgment as to Plaintiff's unlawful entry and search claim and state law claim against Defendants, and denies Defendants' motion as to the excessive force claim.

Dated: July 26, 2021
        Brooklyn, New York

                             SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge

---

[18]  Plaintiff filed a purported notice of claim with the Eastern District of New York, which the Court noted was a deficient filing because notices of claims are not filed in federal court, (Not. of Deficient Filing, Docket Entry No. 2); *see* N.Y. Gen. Mun. Law §§ 50-e(2)–(3) (discussing the required contents of the notice of claim and the procedure for serving the notice of claim).

[19]  Because the Court dismisses Plaintiff's state law claim for failure to file a notice of claim, the Court declines to address Defendants' argument that Plaintiff's silence about his state law claims suggests that he has abandoned such claims at least as to the allegedly missing property.  (Defs.' Mem 16–18; Defs.' Reply 10.)